Trevor J. Lee (16703)
**HOGGAN LEE HUTCHINSON**
257 E 200 S, #1050
Salt Lake City, Utah 84111
Tel. (435) 615-2264
trevor@hlh.law

David N. Tarlow (CA State Bar No.: 214050) (*pro hac vice admission pending*)
Russell M. Selmont (CA State Bar No.: 214050) (*pro hac vice admission pending*)
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Blvd, 12th Floor
Beverly Hills, CA 90212
Telephone: (310)273-6333
Facsimile: (310)859-2325
dtarlow@ecjlaw.com
rselmont@ecjlaw.com

*Attorneys for East West Bank*

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| EAST WEST BANK,<br><br>    Plaintiff,<br><br>   v.<br><br>HAYLEE GRACE GRIFFIN, an individual, and trustee of THE PRINCESS ASSET PROTECTION TRUST,<br><br>    Defendant. | COMPLAINT<br><br><br><br>Case No.<br><br>District Judge |

EAST WEST BANK ("EWB"), hereby alleges, avers, and complains of defendant Haylee Grace Griffin as follows:

## INTRODUCTION

1.  Until his death in October 2024, Mark Israelsen ("Israelsen") owned and controlled Quantum IR Technologies LLC ("QIR Technologies"), QIR Technology Holdings, Inc., QIR Air Resources LLC, and QIR Cement Thermal Technology, LLC (the "QIR Entities").

2.  As owner of the QIR Entities, Israelsen regularly used company money for personal expenses.

3.  Israelsen is known to have falsified financial reports, auditing reports, and bank statements, and to have misrepresented the QIR Entities' contracts. He also created several bogus shell companies with which the QIR Entities would exchange money, creating the illusion that the Receivership Defendants were profitable. All of these actions were taken to induce lenders, including EWB, to give money to the QIR Entities.

4.  As funds flowed into the accounts of the QIR Entities, Mark Israelsen treated the funds as his own personal reserves, using them to bank roll luxurious lifestyles for himself and his friends. EWB has identified numerous expenditures from the accounts of the QIR Entities—including the purchase and maintenance of two helicopters, one airplane, several luxury cars, and multiple homes—that bear no reasonable relationship to the businesses of the QIR Entities.

5.  On February 12, 2025, EWB filed a Complaint against the QIR Entities in the United States District Court for the District of Utah, Civil No. 2:25-cv-00105 (the "EWB Action").[1] Therein, EWB requested the appointment of a receiver.

---

[1] EWB brought the action for itself and as agent for other lenders under EWB's loan agreement with Quantum IR Technologies, LLC.

6. On April 7, 2025, Alex Moglia was appointed as Receiver over the QIR Entities to identify, collect, and preserve the assets of the Receivership Estate for the benefit of the estate's creditors.

7. The instant action is brought by EWB directly for damages resulting from the Defendant's receipt and retention of monies and property which was stolen from it by Israelsen and the QIR Entities, as well as other entities which Mr. Israelsen controlled.

## PARTIES, JURISDICTION, AND VENUE

8. EWB is a California banking corporation with its principal place of business in California.

9. Haylee Grace Griffin ("Griffin"), both as an individual, and as trustee of The Princess Asset Protection Trust, is a recipient of monies and gifts which were stolen by Mr. Israelsen and the QIR Entities from EWB, or purchased with monies stolen by them.

10. Upon information and belief, Griffin is a resident of and is domiciled in the State of Utah.

11. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## FACTS

*Background*

13. In 2022, Israelsen began seeking, and ultimately obtained, capital infusions from EWB for the QIR Entities. In order to obtain the financing and investments, Israelsen made numerous representations to EWB regarding the operations and financial condition of the QIR Entities.

3

14. To induce EWB's agreement to these debt offering arrangements, in or about June 2022, Israelsen circulated to EWB a Due Diligence Report for QIR Technologies, purportedly prepared by Tanner & Co., LLC ("Tanner"), dated April 2022, for the fiscal year ending December 31, 2021.

15. In reliance upon the Tanner Due Diligence Report and other statements from Israelsen, EWB entered into a Loan and Security Agreement with QIR Technologies as the borrower and the other QIR Entities as guarantors on August 18, 2022. Under the Loan and Security Agreement, EWB provided a total of $27,000,000 in funding to QIR Technologies.

16. The Loan and Security Agreement was amended as of December 20, 2023, through an Amended and Restated Loan and Security Agreement. Under that Amended and Restated Loan and Security Agreement, EWB provided additional funding to QIR Technologies.

17. In or about 2024, Israelsen sought additional capital infusions from EWB through debt offerings.

18. To induce EWB to provide capital, Israelsen and the QIR Entities were required to provide disclosures regarding the QIR Entities' business and finances. To that end, in January 2024, the QIR Entities provided EWB with access to an electronic drop box folder containing information about the QIR Entities' business and finances (the "Drop Box").

19. The drop box folder contained the Tanner Due Diligence Report, which Israelsen represented to EWB to have been prepared by Tanner.

20. The drop box folder also contained a document, which Israelsen represented to EWB to be an Independent Auditors' Report, purportedly from Deloitte & Touche, LLP, for the fiscal year ending December 31, 2022. The audit represented that QIR Technologies generated

$20,026,863 of revenue and $6,420,414 of net income for the fiscal year ended December 31, 2022.

21. As described in more detail below, both the Tanner Due Diligence Report and Deloitte & Touche audits were fraudulent and did not accurately reflect QIR Technologies' financial condition.

22. Israelsen also uploaded falsified bank statements to the drop box folder to make it appear that the QIR Entities were generating revenue and paying expenses.

23. In 2023 and 2024, Israelsen created several bogus shell companies with names deceptively similar to actual companies that would be portrayed as either vendors or customers of the QIR Entities, to serve his own ends.

24. Upon information and belief, Israelsen opened bank accounts for these bogus shell companies to transfer funds to and from the QIR Entities to make it appear that the QIR Entities were conducting business and had actual revenue.

25. The bogus shell companies created by Israelsen include, but may not be limited to, the following: Ultratech Ltd LLC, QATSS VN LC, CMX NA Ltd LLC, SCG NA Ltd LLC, FLIR APAC Limited Company, and Optical Systems Integration LLC.

26. On or about February 27, 2024, Israelsen also uploaded to the drop box folder alleged contracts with 28 purported customers of the QIR Entities. The supposed customer contracts appeared to validate the revenues represented in the audits. Upon information and belief, however, these contracts were fictitious, and no such contracts existed between the QIR Entities and the purported customers.

27. On March 19, 2024, the QIR Entities entered into a Second Amended and Restated Loan and Security Agreement with EWB as Agent. Under all of the loan and security agreements described herein, EWB provided a total of $40,220,000 in loans to QIR Technologies.

28. In addition to the financing he obtained for the QIR Entities, Israelsen also induced Investors to provide capital in exchange for preferred equity in the QIR Entities.

29. Israelsen died by suicide on October 20, 2024.

30. On October 23, 2024, Cade Cunningham, who at the time was a member of the board of directors of QIR Holdings, received a letter from David Sorgen, on behalf of Deloitte & Touche LLP. Mr. Sorgen wrote:

> I understand that you provided Deloitte & Touche LLP ("D&T") the attached document, which purports to be a report of Deloitte & Touche LLP on the financial statements of Quantum IR Technologies LLC ("Quantum IR") as of December 31, 2023, on D&T letterhead.
>
> This document is not genuine, it was not issued by D&T, and it was prepared and distributed without the knowledge or consent of D&T. D&T has never issued any reports on financial statements of Quantum IR or performed any services for Quantum IR.

31. Further, Tanner has informed EWB, both directly and through Mr. Moglia, that it never prepared the Due Diligence Report and conducted no review of QIR Technologies.

*Haylee Griffin*

32. Upon information and belief, Defendant Griffin was a romantic partner of Israelsen. The two were planning a wedding at the time of Israelsen's death. Israelsen and Griffin also jointly entered a Specimen Storage Agreement (the "Agreement") with the University of Utah (the "University"), whereunder the University agreed to preserve a sample of Israelsen's sperm on behalf of Griffin, who signed the Agreement as Israelsen's spouse. On information and belief,

Israelsen paid $11,317.34 for the storage, with funds originating from fraudulently induced loan proceeds from EWB.

33. Griffin is an insider of Israelsen and the QIR Entities.

34. Upon information and belief, Griffin is not employed.

*The Homes*

35. Despite lacking a substantial source of income, in the year 2024, Griffin purchased three separate homes (together, the "Homes") for a combined approximate value of $3.8 million.

36. Griffin purchased the first home on or around May 8, 2024, located at 579 North 1400 West, Farmington, UT 84025 with an approximate value of $617,000.00 (the "579 Home"). On information and belief, the 579 Home was purchased using funds that constituted fraudulently induced loan proceeds loaned by EWB to QIR Entities and were provided to Griffin by Israelsen through the QIR Entities or other entities that he controlled. On November 26, 2024, Griffin transferred the 579 Home to herself as Trustee of The Princess Asset Protection Trust, U/A. She recorded the transfer on January 9, 2025.

37. The legal description of the 579 Home is as follows:

**UNIT 182, SEGO HOMES AT STATION PARK PHASE 1, ACCORDING TO THE OFFICIAL PLAT THEREOF AS RECORDER IN THE OFFICE OF THE DAVIS COUNTY RECORDER.**

Parcel ID No. 08-687-0182

38. Griffin purchased the second home on or around August 20, 2024, located at 504 South 1375 West, Farmington, UT 84041 with an approximate value of $2,750,000.00 (the "504 Home"). On information and belief, the 504 Home was purchased using funds that originated from the monies fraudulently induced to be loaned by EWB to QIR Entities and were provided to Griffin

by Israelsen. On November 26, 2024, Griffin transferred the 504 Home to herself as Trustee of The Princess Asset Protection Trust, U/A. She recorded the transfer on January 9, 2025.

39. The legal description of the 504 Home is as follows:

**LOT 507, CHESTNUT FARMS P.U.D. SUBDIVISION – PHASE 5, ACCORDING TO THE OFFICIAL PLAT THEREOF ON FILE AND OF RECORD IN THE DAVIS COUNTY RECORDER'S OFFICE.**

Parcel ID No. 08-680-0507

40. Griffin purchased the third home on or around October 16, 2024, located at 2648 West 3230 South, Syracuse, UT 84075 with an approximate value $535,000.00 (the "2648 Home"). On information and belief, the 2648 Home was purchased using funds that originated from the monies fraudulently induced to be loaned by EWB to the QIR Entities and were provided to Griffin by Israelsen. On November 26, 2024, Griffin transferred the 2648 Home to herself as Trustee of the Princess Asset Protection Trust, U/A. She recorded the transfer on January 9, 2025.

41. The legal description of the 2648 Home is as follows:

**Lot 105, The Fields Subdivision Phase 1, according to the Official Plat thereof as recorded in the Office of the Davis County Recorder, State of Utah**

Parcel ID No. 15-019-0105

*The Cars*

42. On July 23, 2024, Griffin purchased a 2024 BMW Model I5 M60 (the "I5"), with a vehicle identification number of WBY43FK07RCS04202. Griffin paid $71,957.05 for the I5, plus the trade-in of her 2024 Toyota RAV-4 (the "RAV-4"), which was valued at $36,000.00. Upon information and belief, the account from which the $71,957.05 was wired belongs to Quantum IR

Technologies— and was obtained from the monies fraudulently induced to be loaned by EWB to the QIR Entities.

43. Griffin's RAV-4 was purchased on March 4, 2024, for $49,870.19 using funds from a Matlin Capital LLC account ending in 5045. Upon information and belief, the funds in the Matlin Capital LLC account originated from the monies fraudulently induced to be loaned by EWB to the QIR Entities and were provided to Griffin by Israelsen.

44. Upon information and belief, in 2024 Griffin also purchased a 2024 Chevrolet Corvette using funds from the monies fraudulently induced to be loaned by EWB to the QIR Entities. EWB will refer to the Rav-4, Corvette and the BMW together as the "Cars."

*Other Transfers*

45. In 2024, Israelsen and the QIR Entities transferred to Griffin substantial sums of money directly, or from the QIR Entities to one or more of his shell companies, then on to Griffin.

46. For example, between March 18, 2024, and September 30, 2024, an account owned by Quantum IR Technologies with an account number ending in 3316 transferred $47,500.00 to Griffin. A separate account owned by Quantum IR Technologies with an account number ending in 2813 transferred $14,000.00 to Griffin during that same period.

47. Between June 14, 2024, and August 20, 2024, an account owned by Optical Systems Integration LLC (one of Israelsen's shell companies) ending in 8963 transferred $44,000.00 to Griffin.

48. Additionally, on February 29, 2024, an account owned by CMX NA LTD LLC (another of Israelsen's shell companies) ending in 5625 transferred $1,000.00 to Griffin.

9

49. Israelsen also transferred $6,000 to Griffin between February 26, 2024 and May 10, 2024.

50. Upon information and belief, Griffin was the transferee of additional transactions from Israelsen or the QIR Entities of money and personal property, including various luxury items. EWB will refer to the transfers in paragraphs 48–52 collectively as the "Other Transfers."

51. At all times relevant hereto, Israelsen and the QIR Entities were insolvent or had assets that were unreasonably small in relation to transactions in which they were involved.

52. On or about December 17, 2024, counsel for the QIR Entities sent a letter to Griffin notifying her that they had embarked on a far-reaching investigation into payments made to her by Israelsen before his death, whereby she received a wire from Israelsen and the QIR Defendants in the amount of $9,339, and demanded that same be returned. Griffin received this letter on December 19, 2024. To date, Griffin has retained all of said monies, and has refused to return them.

53. On or about December 17, 2024, the QIR Entities sent a letter to Griffin demanding that she preserve all paper documents and ESI relating to the QIR Entities and Israelsen. Plaintiff is informed and believes and thereon alleges that Griffin thereafter deleted all documents and communications which she had relating to the QIR Entities and Israelsen.

54. On April 7, 2025, the Court in the matter of EWB v. the QIR Entities issued an Order Appointing Receiver, where the Court found that "[b]etween August 2022 and March 2024, Mr. Israelsen received about $73 million in financing and investments for the QIR businesses; he passed away in October 2024. **Mr. Israelsen obtained these funds through a complex scheme of fraud and misrepresentation… And he also transferred large sums of QIR business funds into his personal trust to conceal the assets from detection and convert them for personal use.**"

55. On May 14, 2025, the Receiver filed an action against Griffin, seeking to avoid and recover the voidable transactions of the Homes and Cars which Griffin used money which she was provided by Griffin to purchase, as well as the Other Transfers. Notwithstanding the fact that Griffin was aware that the Receiver was seeking to have her return the Homes, Cars and Other Transfers to her as early as December of 2024, and the fact that Griffin accepted service of the Summons and Complaint in this matter on June 6, 2025, Griffin has continued to retain the Homes, Cars, money and Other Transfers.

56. On August 25, 2025, to ensure there was no uncertainty, EWB sent Griffin a letter explaining that the funds Griffin received from Israelsen and the QIR Entities were funds that were stolen from EWB, that Griffin's continued retention of those funds was illegal, and demanding the return of the money that Israelsen and the QIR Entities fraudulently obtained from EWB. Griffin to date has failed to comply and remains in retention of the money that was stolen from EWB.

### FIRST CLAIM FOR RELIEF
(Voidable Transfer – Utah Code Ann. § 25-6-101, et seq.)

57. EWB realleges and incorporates herein by reference each of the preceding allegations as if set forth completely herein.

58. At all relevant times hereto, Israelsen and the QIR Entities had at least one creditor.

59. Griffin was an insider of Israelsen and the QIR Entities.

60. At all relevant times hereto, Israelsen and the QIR Entities were insolvent, as defined under Utah Code Ann. § 25-6-103(1).

61. Israelsen and the QIR Entities made numerous transfers to Griffin, including the Other Transfers and the money used to purchase the Homes and the Cars.

11

62. Israelsen and the QIR Entities made the foregoing transfers with the actual intent to hinder, delay, or defraud a creditor. This is particularly true because the funds transferred to Griffin were originally obtained from EWB by fraud.

63. Israelsen and the QIR Entities made the foregoing transfers without receiving reasonably equivalent value in exchange.

64. Pursuant to Utah Code Ann. §§ 25-6-202, 25-6-203, and 25-6-303, the EWB may avoid and recover the voidable transactions.

**SECOND CLAIM FOR RELIEF**
(Unjust Enrichment)

65. EWB realleges and incorporates herein by reference each of the preceding allegations as if set forth completely herein.

66. Through the Other Transfers, and by funding payments for the Homes and Cars with monies which EWB was fraudulently induced to loan to the QIR Entities, the QIR Entities and Mr. Israelsen conferred benefits upon Griffin.

67. Griffin knows and understands the benefits she received.

68. It would be unjust, under the circumstances, to allow Griffin to retain the Homes, Cars, and funds from the Other Transfers.

**THIRD CLAIM FOR RELIEF**
(Theft-Utah Code Ann. § 76-6-408)

69. EWB realleges and incorporates herein by reference each of the preceding allegations as if set forth completely herein.

70. From August of 2022 through March of 2024, money belonging to EWB, was stolen by false pretenses by Israelsen, through the QIR Entities. $4,133,644.58 of those stolen monies were then provided by Israelsen to Griffin, his love interest and fiancé.

71. Griffin retained the stolen monies, and used them to purchase the Homes, the Cars and kept some of it in cash.

72. Griffin has retained the stolen money, Homes, Cars and Other Transfers which she purchased with the stolen money, even after she knew or believed that the money was stolen or probably stolen.

73. Griffin used the $4,133,644.58 to purchase the Homes, Cars and Other Transfers in order to conceal that it was stolen in order withhold it from EWB.

74. Griffin intended to deprive EWB of the stolen money, Homes, Cars and Other Transfers.

75. Defendant has violated Utah Criminal Code § 76-6-408.

76. EWB is entitled to three times the amount of actual damages it has sustained by Griffin's retention of stolen property, plus costs of suit, and attorneys' fees, all in an amount to be proven at trial, but believed to be in excess of $4,133,644.58, trebled.

## FOURTH CLAIM FOR RELIEF
(Conversion)

77. EWB realleges and incorporates herein by reference each of the preceding allegations as if set forth completely herein.

78. From August of 2022 through March of 2024, money belonging to EWB was stolen by false pretenses by Israelsen, through the QIR Entities. $4,133,644.58 of those stolen monies were then provided by Israelsen to Griffin, his love interest and fiancé.

79. Griffin retained the stolen monies, and used them to purchase the Homes, the Cars, Other Transfers and kept some of it in cash.

80. Griffin has willfully interfered with EWB's rights to the stolen funds, in the amount of $4,133,644.58.

81. Griffin's receipt, retention and use of the $4,133,644.58 was done without lawful justification.

82. Griffin's receipt, retention and use of the $4,133,644.58 deprived EWB of the use of the stolen funds.

83. EWB, the victim of Griffin's conversion, is entitled to the return of $4,133,644.58 as Griffin has deprived it of the use and possession of those monies.

84. As Griffin's action were willful, wanton and in express violation of the of the EWB's rights, EWB is entitled to recover punitive and exemplary damages in an amount according to proof.

<b><u>PRAYER FOR RELIEF</u></b>

WHEREFORE, EWB prays as follows:

A. Judgment against Griffin avoiding the transfers under Utah Code Ann. § 25-6-101, et seq., and permitting the EWB's of the value of the Transfers.

B. That EWB be awarded damages against Griffin in an amount to be determined at trial, plus prejudgment and post judgment interest, costs and attorney fees;

C. That EWB be awarded treble damages against Griffin in an amount to be determined at trial, plus prejudgment and post judgment interest, costs and attorney fees, for violation of Utah Criminal Code § 76-6-408;

D. The Griffin pay punitive and exemplary damages in an amount to be determined at trial;

E. That the Homes, the Cars, and the Other Transfers—including the various luxury items Griffin received from Israelsen—be held in constructive trust for the benefit of EWB.

F. Judgment for pre-judgment interest, costs, and fees, including reasonable attorney's fees, as may be allowed by law.

G. Under all claims for relief, for such other and further relief as the Court deems appropriate.

DATED this 15th day of September, 2025.

/s/ *Trevor J. Lee*
Trevor J. Lee
**HOGGAN LEE HUTCHINSON**

David N. Tarlow (*pro hac vice pending*)
Russell M. Selmont (*pro hac vice pending*)
**ERVIN COHEN & JESSUP LLP**

*Attorneys for East West Bank*